# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| AMERICAN CHEMISTRY COUNCIL ) | |
| ) | |
| ) | |
| *Petitioner*, ) | CASE NO. <u>22-1177</u> |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES ENVIRONMENTAL ) | |
| PROTECTION AGENCY ) | |
| ) | |
| *Respondent.* ) | |
| ) | |
| ) | |
| ) | |
| ) | |

## PETITION FOR REVIEW

Pursuant to Sections 1448(a)(1) and 1448(a)(2) of the Safe Drinking Water

Act ("SDWA" or "the Act"), 42 U.S.C. § 300j-7(a)(2), Rule 15 of the Federal

Rules of Appellate Procedure, and Rule 15 of the District of Columbia Circuit

Local Appellate Rules, Petitioner American Chemistry Council ("ACC") hereby

petitions the Court for review of Respondent the United States Environmental

Protection Agency's ("EPA" or "the Agency") *Lifetime Health Advisories on Four*

*Perfluoroalykl Substances*, published in the Federal Register on June 21, 2022.  87

FR 36848.  Specifically, this petition focuses on EPA's lifetime drinking water

advisories for perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS") (the "health advisories"). A copy of the Federal Register Notice announcing the referenced Agency action taken pursuant to Section 1412 of the Act is attached as Exhibit A. A copy of EPA's press release announcing the health advisories is attached as Exhibit B.

This petition challenges EPA's issuance of scientifically flawed and procedurally improper "interim"[1] health advisories setting impossibly low standards for PFOA and PFOS in drinking water: for PFOA, the level set by the Agency is 1,000 times *below* the lowest level that test methods can detect. EPA's PFOA and PFOS "interim" health advisories are the result of egregious procedural and substantive errors, in violation of the Safe Drinking Water Act ("SDWA") and the Administrative Procedure Act ("APA"). Such errors include:

- EPA's PFOA and PFOS "interim" health advisories do not comply with SDWA §1412(b)(3)(A), requiring the use of best available, peer-reviewed science and supporting studies conducted in accordance with sound and objective scientific practices.

- The Agency's Action ignores SDWA § 1412(b)(3)(B), mandating that the Agency's communication of public health effects and risk

---

[1] The Safe Drinking Water Act does not include the concept of or provision for an "interim" health advisory. *See infra* at p. 8-9.

be comprehensive, informative, and understandable. The human health risk communicated in EPA's health advisory is incomprehensible, incomplete, and not based on sound science.

- EPA improperly circumvented the regulatory process to establish an interim national primary drinking water regulation in SDWA § 1412(b)(1)(D). In so doing, EPA sought to induce action without following relevant procedural requirements.

- EPA's PFOA and PFOS "interim" health advisories are arbitrary and capricious. They are Agency actions that are inconsistent with contemporaneous actions EPA has taken with respect to screening levels for PFOA and PFOS. EPA also issued the "interim" health advisories knowing they are based on flawed science.

### The Safe Drinking Water Act

EPA derives its authority to regulate public water systems and establish standards for drinking water from the Safe Drinking Water Act, 42 U.S.C. § 300 et. seq., and the 1996 amendments to the SDWA. Section 1412 of the SDWA establishes the scope of EPA's authority to create National Drinking Water Regulations, including adopting and publishing Health Advisories. EPA's ability to establish Health Advisories for drinking water derives from SDWA §1412(b)(1)(F). In carrying out such responsibilities, Section 1412 of the Act

mandates that "to the degree that an Agency action is based on science, the Administrator shall use . . . the best available, peer-reviewed science and supporting studies conducted in accordance with sound and objective scientific practices." §1412(b)(3)(A)(i). In other words, when the Agency takes any science-based action within the scope of §1412, such as issuing a Health Advisory, it must use the best available, peer-reviewed science and communicate any human health risk in a comprehensible and complete fashion. *Id*; §1412(b)(3)(B).

## The PFOA and PFOS "Interim" Health Advisories

EPA first issued drinking water health advisories for PFOA and PFOS in 2009. In 2016, EPA updated its PFOA and PFOS drinking water health advisories to establish limits of 70 parts per trillion, individually or combined.[2] 81 FR 33250 (May 25, 2016). With approval from EPA, a number of state and federal enforcement programs automatically incorporate EPA's health advisory levels as regulatory standards for drinking water or remedial cleanup standards. For example, Nebraska's statewide standard for groundwater requires a cleanup if EPA's Maximum Contaminant Level for a pollutant is exceeded, and "[i]f there is

---

[2] One part per trillion is equivalent to one drop of water in 20 Olympic-sized swimming pools. *See, e.g.,* Missouri Dept. Nat. Res., UNDERSTANDING DATA, https://dnr.mo.gov/monitoring/understanding-data (last visited Jul. 28, 2022).

no established standard, EPA's Ambient Water Quality Criteria, Health Advisories, and other documents will be used to set the preliminary cleanup level").[3]

In November 2021, EPA submitted two documents that formed the basis for the Agency Action that is the subject of this Petition to its Science Advisory Board for review: (1) *Proposed Approaches to the Derivation of a Draft Maximum Contaminant Level Goal for Perfluorooctane Sulfonic Acid (PFOS) (CASRN 1763-23-1) in Drinking Water,* and (2) *Proposed Approaches to the Derivation of a Draft Maximum Contaminant Level Goal for Perfluorooctanoic Acid (PFOA) (CASRN 335-67-1) in Drinking Water*, form the basis of the EPA's "interim" health advisory levels.[4] EPA provided an extremely short period for the public to submit technical comments on the thousands of pages of documents it provided the Science Advisory Board. Despite this abbreviated comment period, a number of

---

[3] Nebraska, 118 Neb. Admin. Code App. A. Other states that automatically incorporate EPA health advisory levels into drinking water or cleanup standards include: Iowa, Iowa Admin. Code r. 567-137.5(4) ("If no enforceable [EPA Maximum Contaminant Level] exists, the statewide standard for chemicals will be the lifetime health advisory level (HAL) . . ."); New Hampshire, N.H. Rev. Stat. Ann. § 485-c:6(I) (2022) ("Where federal maximum contaminant level or health advisories have been promulgated under the Federal Safe Drinking Water Act or rules relevant to such act, ambient groundwater quality standards shall be no less stringent than such standards"); Ohio, Ohio Admin. Code § 3701-28-04(N)(4) (2022) ("For the purposes of making recommendations for the consumption and treatment of water from private water systems, the maximum contaminant levels, health advisory levels, or action levels and standards of chemical constituents for private water systems shall be the same as the primary maximum contaminant levels health advisory levels, or action levels and standards established by the United States environmental protection agency for public water supplies . . . "); Pennsylvania, 35 Pa. Cons. Stat. § 6026.303(a) (2022) ("The Environmental Quality Board shall promulgate Statewide health standards for regulated substances for each environmental medium. The standards shall include any existing numerical residential and nonresidential health-based standards adopted by the department and by the Federal Government by regulation or statute, and health advisory levels"); South Dakota, S.D. Admin. R. 74:54:01:05 (2022) ("Groundwater shall not contain potential toxic pollutants. Potential toxic pollutants, other than those listed in Table 1 and Table 2 of § 74:54:01:04, must be nondetectable in groundwater at detection limits of the currently acceptable sampling and analytical techniques as approved by the secretary in § 74:54:01:06 until a maximum contaminant level (MCL) or health advisory level is set by the EPA").

[4] At the same time, EPA submitted two additional related documents for SAB review, but the health advisories are based on the documents cited.

5

commenters, including ACC, raised significant concerns about the science EPA relied on for its draft approaches to developing maximum contaminant level goals for PFOA and PFOS.[5]  The Science Advisory Board's PFAS Panel likewise had significant concerns about EPA's science.  These concerns were expressed and documented during meetings held in December 2021, and January, May, and July 2022.[6]

Notwithstanding those concerns, and while EPA's science was still under review by its Science Advisory Board, EPA issued the "interim" health advisories for PFOA and PFOS that are the subject of this Petition.  In webinars EPA hosted regarding the health advisories for PFOA and PFOS, EPA made clear that the toxicity values on which the health advisories are based "**will change** as a result of work to address SAB recommendations."[7]  In other words, EPA knowingly published incorrect health advisories.

When the full Science Advisory Board met in July 2022 to discuss the review of EPA's draft maximum contaminant level goal approaches, several Board

---

[5] *See, e.g.,* SAB PFAS Review Panel Meeting (Dec. 16, 2021 to Jan. 7, 2022), https://sab.epa.gov/ords/sab/f?p=100:19:4412091447490:::RP,19:P19_ID:963; Public Meeting of the Chartered SAB (July 18, 2022 to July 20, 2022), https://sab.epa.gov/ords/sab/f?p=100:19:9624519225766:::19:P19_ID:975.

[6] The papers submitted to the Science Advisory Board for review, all comments to the Board, and the Board's reviewer comments and draft report and recommendations are available online and should be part of the administrative record.  *See, e.g., https://sab.epa.gov/ords/sab/f?p=100:19:4412091447490:::RP,19:P19_ID:963.*

[7] Office of Water, U.S. Env't. Prot. Agency, WEBINAR ON DRINKING WATER HEALTH ADVISORIES FOR FOUR PFAS (GENX, PFBS, PFOA, PFOS) AND BIPARTISAN INFRASTRUCTURE LAW ANNOUNCEMENT, https://www.epa.gov/system/files/documents/2022-07/PFAS%20HAs%20for%20Water%20Utility%20Briefing%20-%20June%202022Final.pdf (June 2022) (emphasis in original).

members questioned the scientific integrity of EPA's documents.  One Board member stated that the EPA documents do not "represent the state of practice" around information gathering.[8]  Another noted that there are "significant problems that really can't be fixed," and went so far as to say he would reject the papers if they were being peer reviewed for publication purposes.  *Id.*  Science Advisory Board members also expressed concern that the health advisories "could undermine the rulemaking process" and would erode public confidence in the Agency because of the flawed science on which they are based and the associated issue of appropriate health risk communication.[9]

## The "Interim" Health Advisories have Immediate Effect

Agency actions adopting and publicizing health advisories have signfiicnat and far-reaching consequences.  A substantial number of states that have received EPA approval to carry out and enforce drinking water programs under the SDWA incorporate EPA's health advisory levels as enforceable standards for drinking water.  *See supra* note 2.  Further, federal and state enforcement authorities adopt such limits as remedial standards for contaminated sites and incorporate them into cleanup orders.  *Id.* Moreover, since announcing the updated health advisory levels on June 15, 2022, EPA has repeatedly urged states and municipal water authorities

---

[8] *Public meeting of the Chartered SAB July 20 1:00 pm – 6:00 pm (EST)*, at 1:38:48–1:43:16, YOUTUBE (July 20, 2022), https://youtu.be/UzDtzYDJB_I?t=5928.
[9] *See, e.g.,* Quality Review Comments from SAB Members on the SAB Draft Report, Comment of Dr. Jonathan Samet, 13 (July 17, 2022), https://sab.epa.gov/ords/sab/f?p=100:19:9624519225766:::19:P19_ID:975.

to take action with any detection of PFOA or PFOS.  For example, in a recent webinar, EPA recommended "that public water systems that find PFOA or PFOS in their drinking water take steps to inform customers, undertake additional sampling to assess the level, scope, and source of contamination, and examine steps to limit exposure."[10]  In the same document, EPA recommended "that communities and water systems that measure any levels of PFOA or PFOS . . . inform their customers and consider taking actions to reduce PFAS levels in their drinking water by installing treatment technologies or obtaining a new uncontaminated source of drinking water, if available."  *Id.*

**The "Interim" Health Advisories are**
**Procedurally and Substantively Defective**

In naming its health advisories "interim," EPA has obfuscated two critical facts.  First, EPA uses the term "interim" because it knows its health advisories are not set at a scientifically defensible level.  Second, the SDWA contains no provision or concept relating to an "interim" health advisory.  The word "interim" appears nowhere in the SDWA in relation to health advisories.  EPA's action appears to be a disguised effort to adopt an interim national primary drinking water regulation under SDWA §1412(b)(1)(D) without undertaking the appropriate

---

[10] Office of Water, U.S. Env't. Prot. Agency, WEBINAR ON DRINKING WATER HEALTH ADVISORIES FOR FOUR PFAS (GENX, PFBS, PFOA, PFOS) AND BIPARTISAN INFRASTRUCTURE LAW ANNOUNCEMENT, https://www.epa.gov/system/files/documents/2022-07/PFAS%20HAs%20for%20Water%20Utility%20Briefing%20-%20June%2022Final.pdf (June 2022).

process. Establishing an interim primary drinking water standard would have required EPA to consult with and provide a written response to comments from the Secretary of Health and Human Services. SDWA §1412(b)(1)(D). Such a standard, if set at the same levels as the "interim" health advisories, is impossible to implement or enforce, as those levels are well below any known technical detection limits established by EPA's own validated test methods. Even water that registers no detectable level of PFOA or PFOS cannot be confirmed to be in compliance with the parts per quadrillion "interim" health advisory levels published by EPA.[11] EPA should not be permitted to circumvent the SDWA's provisions by issuing "interim" health advisories based on faulty science that are infeasible to implement.

### Request for Relief

Petitioner ACC respectfully requests that the Court grant this Petition, vacate the Agency's "interim" health advisories for PFOA and PFOS, and remand to the Agency for further action consistent with the SDWA.

---

[11] One part per quadrillion is equivalent to 1 drop of water in 1,000 Olympic-sized swimming pools, or 1 second of time in approximately 31.7 million years. *See., e.g.,* https://www.chemeurope.com/en/encyclopedia/Parts-per_notation.html.

Dated: July 29, 2022

Respectfully submitted,

*/s/Nessa Horewitch Coppinger*
Nessa Horewitch Coppinger
D.C. Bar No. 477467
Thomas Richichi
D.C. Bar No. 31478
Beveridge & Diamond, PC
1900 N Street, N.W., Suite 100
Washington, DC 20036
Phone: (202) 789-6000
ncoppinger@bdlaw.com
trichichi@bdlaw.com

*Counsel for Petitioner American Chemistry Council*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Petition for Review and Rule 26.1 Disclosure Statement were filed with the Clerk of the Court using the CM/ECF system and served on Respondents through electronic mail to Michael Regan, Betsy Behl, and Jeffrey Prieto on this 29th day of July 2022.

Mr. Michael S. Regan
Administrator
U.S. Environmental Protection Agency
Office of the Administrator (1101A)
1200 Pennsylvania Ave, NW
Washington D.C. 20460
Regan.Michael@epa.gov

Mr. Merrick B. Garland
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, D.C. 20460

Ms. Betsy Behl
Division Director
U.S. Environmental Protection Agency
Office of Water
Health and Ecological Criteria Division
(4301M)
1200 Pennsylvania Ave, NW
Washington D.C. 20460
behl.betsy@epa.gov

Mr. Jeffrey Prieto
General Counsel
U.S. Environmental Protection Agency
Office of General Counsel (2310A)
1200 Pennsylvania Ave, NW
Washington, D.C. 20460
prieto.jeffrey@epa.gov

Correspondence Control Unit
U.S. Environmental Protection Agency
Office of General Counsel (2311)
1200 Pennsylvania Ave, NW
Washington, D.C. 20460

# EXHIBIT A



requirements. The consequences of not collecting this information are that the Commission would be unable to fulfill its statutory mandate under the Energy Policy Act of 2005 to:

• Establish a schedule for agencies to review requests for federal

authorizations required for a project, and

• Compile a record of each agency's decision, together with the record of the Commission's decision, to serve as a consolidated record for the purpose of appeal or review, including judicial review.

*Type of Respondent:* Agencies with federal authorization responsibilities.

*Estimate of Annual Burden:*[1] The Commission estimates the annual public reporting burden[2] and cost[3] (rounded) for the information collection as follows:

### FERC–606 (Notification of Request for Federal Authorization and Requests for Further Information), and FERC–607 (Report on Decision or Action on Request for Federal Authorization)

| | Number of respondents | Annual number of responses per respondent | Total number of responses | Average burden hours & cost per response | Total annual burden hours & total annual cost | Cost per respondent ($) |
|---|---|---|---|---|---|---|
| | (1) | (2) | (1) * (2) = (3) | (4) | (3) * (4) = (5) | (5) ÷ (1) |
| FERC–606 ............................. | 1 | 1 | 1 | 4 hrs.; $348 ................ | 4 hrs.; $348 ................ | $348 |
| FERC–607 ............................. | 1 | 1 | 1 | 1 hr.; $87 ................... | 1 hr.; $87 ................... | 87 |
| Total ......................... | 2 | ....................... | 2 | ..................................... | 5 hrs.; $435 ............... | |

*Comments:* Comments are invited on: (1) whether the collection of information is necessary for the proper performance of the functions of the Commission, including whether the information will have practical utility; (2) the accuracy of the agency's estimate of the burden and cost of the collection of information, including the validity of the methodology and assumptions used; (3) ways to enhance the quality, utility and clarity of the information collection; and (4) ways to minimize the burden of the collection of information on those who are to respond, including the use of automated collection techniques or other forms of information technology.

Dated: June 14, 2022.

**Debbie-Anne A. Reese,**
*Deputy Secretary.*

[FR Doc. 2022–13220 Filed 6–17–22; 8:45 am]

**BILLING CODE 6717–01–P**

---

## DEPARTMENT OF ENERGY

### Federal Energy Regulatory Commission

### Combined Notice of Filings

Take notice that the Commission has received the following Natural Gas Pipeline Rate and Refund Report filings:

### Filings Instituting Proceedings

*Docket Numbers:* RP22–979–000.

*Applicants:* WBI Energy Transmission, Inc.

*Description:* § 4(d) Rate Filing: 2022 Negotiated and Non-Conforming SA Blue Flint to be effective 7/15/2022.

*Filed Date:* 6/14/22.

*Accession Number:* 20220614–5030.

*Comment Date:* 5 p.m. ET 6/27/22.

Any person desiring to intervene or protest in any of the above proceedings must file in accordance with Rules 211 and 214 of the Commission's Regulations (18 CFR 385.211 and 385.214) on or before 5:00 p.m. Eastern time on the specified comment date. Protests may be considered, but intervention is necessary to become a party to the proceeding.

The filings are accessible in the Commission's eLibrary system (*https:// elibrary.ferc.gov/idmws/search/ fercgensearch.asp*) by querying the docket number.

eFiling is encouraged. More detailed information relating to filing requirements, interventions, protests, service, and qualifying facilities filings can be found at: *http://www.ferc.gov/ docs-filing/efiling/filing-req.pdf.* For other information, call (866) 208–3676 (toll free). For TTY, call (202) 502–8659.

Dated: June 14, 2022.

**Debbie-Anne A. Reese,**
*Deputy Secretary.*

[FR Doc. 2022–13221 Filed 6–17–22; 8:45 am]

**BILLING CODE 6717–01–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

[FRL 9855–01–OW]

### Lifetime Drinking Water Health Advisories for Four Perfluoroalkyl Substances

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notice of availability.

**SUMMARY:** The Environmental Protection Agency (EPA) announces the release of health advisories for four perfluoroalkyl substances (PFAS), including interim updated lifetime drinking water health advisories for perfluorooctanoic acid (PFOA) and perfluorooctane sulfonic acid (PFOS), and final health advisories for hexafluoropropylene oxide (HFPO) dimer acid and its ammonium salt (together referred to as "GenX chemicals") and perfluorobutane sulfonic acid and its related compound potassium perfluorobutane sulfonate (together referred to as "PFBS"). EPA's health advisories, which identify the concentration of chemicals in drinking water at or below which adverse health effects are not anticipated to occur, are: 0.004 parts per trillion (ppt) for PFOA, 0.02 ppt for PFOS, 10 ppt for GenX chemicals, and 2,000 ppt for PFBS. Health advisories are non-regulatory and reflect EPA's assessment of the best available peer-reviewed science. The interim updated health advisories for PFOA and PFOS supersede EPA's 2016 health advisories for PFOA and PFOS.

---

[1] Burden is defined as the total time, effort, or financial resources expended by persons to generate, maintain, retain, or disclose or provide information to or for a federal agency. For further explanation of what is included in the information collection burden, refer to 5 CFR 1320.3.

[2] Annual public reporting burden based on respondents over the last three-year period.

[3] The estimates for cost per response are derived using the formula: Average Burden Hours per Response * 87.00 per hour = Average Cost per Response. The hourly cost figure comes from the

FERC average salary plus benefits of $180,703 per year (or $87.00/hour). These estimates were updated in May 2021. This figure is being used because the staff thinks industry is similarly situated in terms of average hourly cost.

**FOR FURTHER INFORMATION CONTACT:**
Susan Euling, Health and Ecological Criteria Division, Office of Water (Mail Code 4304T), Environmental Protection Agency, 1200 Pennsylvania Avenue NW, Washington, DC 20460; telephone: (202) 566–2717; or email: *euling.susan@epa.gov.*

**SUPPLEMENTARY INFORMATION:**

**I. What are PFAS, and specifically, what are PFOA, PFOS, GenX chemicals, and PFBS?**

PFAS are a large and diverse structural family of compounds used in myriad commercial applications due to their unique properties, such as resistance to high and low temperatures, resistance to degradation, and nonstick characteristics. Although PFAS have been manufactured and used broadly in commerce since the 1940s, particular concern over potential adverse effects on human health grew in the early 2000s with the discovery of PFOA and PFOS in human blood. Since that time, hundreds of PFAS have been identified in water, soil, and air. Many PFAS are environmentally persistent, bioaccumulative, and have long half-lives in humans, particularly the longer-chained carbon species such as PFOA and PFOS. Most uses of PFOA and PFOS were phased out by U.S. manufacturers in the mid-2000s although there are a limited number of ongoing uses. In addition, some currently used PFAS break down into PFOA and PFOS in the environment. PFAS with fewer carbon atoms, such as GenX chemicals and PFBS, were subsequently developed to replace PFOA and PFOS, respectively, and integrated into various consumer products and industrial applications because they have the desired properties and characteristics associated with this class of compounds but are more quickly eliminated from the human body than PFOA and PFOS.

**II. What health effects are associated with exposure to PFOA, PFOS, GenX chemicals, and PFBS?**

The interim updated health advisories for PFOA and PFOS are based on human epidemiology studies in populations exposed to these chemicals. Human studies have found associations between PFOA and/or PFOS exposure and effects on the immune system, the cardiovascular system, human development (*e.g.,* decreased birth weight), and cancer. The most sensitive non-cancer effect and the basis for the interim updated health advisories for PFOA and PFOS is suppression of vaccine response (decreased serum antibody concentrations) in children.

While there is evidence that PFOA is likely to be carcinogenic to humans, EPA has not derived a cancer risk concentration in water for PFOA at this time. There is suggestive evidence of carcinogenic potential of PFOS in humans. Cancer analyses are ongoing for both PFOA and PFOS.

EPA's final health advisories for GenX chemicals and PFBS are based on animal toxicity studies following oral exposure to these chemicals. GenX chemicals have been linked to health effects on the liver, the kidney, the immune system, and developmental effects, as well as cancer. The most sensitive non-cancer effect and the basis for the final health advisories for GenX chemicals is a liver effect (constellation of liver lesions). There is suggestive evidence of carcinogenic potential of oral exposure to GenX chemicals in humans, but data are insufficient to derive a cancer risk concentration in water for GenX chemicals at this time. Animal studies following oral exposure to PFBS have shown health effects on the thyroid, reproductive organs and tissues, developing fetus, and kidney following oral exposure. The most sensitive non-cancer effect and the basis for the final health advisory for PFBS is a thyroid effect (decreased serum total thyroxine). There are no known studies evaluating potential cancer effects of PFBS and so the potential for cancer effects after PFBS exposure could not be evaluated.

**III. What are drinking water health advisories?**

Under the Safe Drinking Water Act, EPA may publish health advisories for contaminants that are not subject to any national primary drinking water regulation. 42 U.S.C. 300g–1(b)(1)(F)). EPA develops health advisories to provide information on the chemical and physical properties, occurrence and exposure, health effects, quantification of toxicological effects, other regulatory standards, analytical methods, and treatment technology for drinking water contaminants. Health advisories describe concentrations of drinking water contaminants at which adverse health effects are not anticipated to occur over specific exposure durations (*e.g.,* one-day, ten-days, and a lifetime). Health advisories serve as technical information to assist Federal, state and local officials, as well as managers of public or community water systems in protecting public health. They are not regulations and should not be construed as legally enforceable Federal standards. Health advisories may change as new information becomes available.

**IV. What are EPA's interim health advisories for PFOA and PFOS?**

EPA is releasing interim updated health advisories for PFOA and PFOS based on data and draft analyses that indicate that the levels at which negative health effects could occur are much lower than previously understood when the agency issued its 2016 health advisories for PFOA and PFOS (70 parts per trillion or ppt). Human studies have found associations between PFOA and/or PFOS exposure and effects on the immune system, the cardiovascular system, development (*e.g.,* decreased birth weight), and cancer. These data and draft analyses, which were released publicly in November 2021, are currently undergoing EPA Science Advisory Board (SAB) review. EPA is concerned about the public health implications of these preliminary findings and is therefore issuing interim updated health advisories for PFOA and PFOS. The interim updated health advisories for PFOA and PFOS are 0.004 ppt and 0.02 ppt, respectively. The interim updated health advisories replace the 2016 final health advisories for PFOA and PFOS which were both set at 70 ppt. EPA is reviewing and will respond to the SAB comments as the Agency moves forward to develop Maximum Contaminant Level Goals (MCLGs) to support the Safe Drinking Water Act National Primary Drinking Water Regulation for PFOA and PFOS, which is expected to be proposed later this year.

**V. What are EPA's final health advisories for GenX chemicals and PFBS?**

EPA is also releasing final health advisories for GenX chemicals and PFBS for the first time, based on EPA's 2021 final toxicity assessments for these PFAS. In chemical and product manufacturing, GenX chemicals are considered a replacement for PFOA, and PFBS is considered a replacement for PFOS. Animal toxicity studies following oral exposure to GenX chemicals have reported health effects in the liver, kidney, immune system, development, as well as cancer. For PFBS, animal studies have reported health effects on the thyroid, reproductive system, development, and kidney following oral exposure. The final health advisories for GenX chemicals and PFBS are 10 ppt and 2,000 ppt, respectively.

**Radhika Fox,**
*Assistant Administrator.*

[FR Doc. 2022–13158 Filed 6–17–22; 8:45 am]

**BILLING CODE 6560–50–P**

# EXHIBIT B

 An official website of the United States government
Here's how you know

**United States
Environmental Protection
Agency**

MENU

Search EPA.gov

**News Releases:   Headquarters**
<https://epa.gov/newsreleases/search/press_office/headquarters-226129> | **Water (OW)**
<https://epa.gov/newsreleases/search/press_office/water-ow-226159>

CONTACT US <https://epa.gov/newsreleases/forms/contact-us>

# EPA Announces New Drinking Water Health Advisories for PFAS Chemicals, $1 Billion in Bipartisan Infrastructure Law Funding to Strengthen Health Protections

Agency establishes new health advisories for GenX and PFBS and lowers health advisories for PFOA and PFOS

June 15, 2022

**Contact Information**
EPA Press Office (press@epa.gov)

**WASHINGTON (June 15, 2022)** Today, the U.S. Environmental Protection Agency (EPA) released four drinking water health advisories for per- and polyfluoroalkyl substances (PFAS) in the latest action under President Biden's action plan to deliver clean water and Administrator Regan's PFAS Strategic Roadmap <https://epa.gov/pfas/pfas-strategic-roadmap-epas-commitments-action-2021-2024>. EPA also announced that it is inviting states and territories to apply for $1 billion – the first of $5 billion in Bipartisan Infrastructure Law grant funding – to address PFAS and other emerging contaminants in drinking water,

specifically in small or disadvantaged communities. These actions build on EPA's progress to safeguard communities from PFAS pollution and scientifically inform upcoming efforts, including EPA's forthcoming proposed National Primary Drinking Water Regulation for PFOA and PFOS, which EPA will release in the fall of 2022.

"People on the front-lines of PFAS contamination have suffered for far too long. That's why EPA is taking aggressive action as part of a whole-of-government approach to prevent these chemicals from entering the environment and to help protect concerned families from this pervasive challenge," said **EPA Administrator Michael S. Regan**. "Thanks to President Biden's Bipartisan Infrastructure Law, we are also investing $1 billion to reduce PFAS and other emerging contaminants in drinking water."

"Today's actions highlight EPA's commitment to use the best available science to tackle PFAS pollution, protect public health, and provide critical information quickly and transparently," said **EPA Assistant Administrator for Water Radhika Fox**. "EPA is also demonstrating its commitment to harmonize policies that strengthen public health protections with infrastructure funding to help communities—especially disadvantaged communities—deliver safe water."

Assistant Administrator Fox announced these actions at the 3rd National PFAS Conference in Wilmington, North Carolina.

**$1 Billion in Bipartisan Infrastructure Law Funding**

As part of a government-wide effort to confront PFAS pollution, EPA is making available $1 billion in grant funding <https://epa.gov/dwcapacity/wiin-grant-emerging-contaminants> through President Biden's Bipartisan Infrastructure Law to help communities that are on the frontlines of PFAS contamination, the first of $5 billion through the Law that can be used to reduce PFAS in drinking water in communities facing disproportionate impacts. These funds can be used in small or disadvantaged communities to address emerging contaminants like PFAS in drinking water through actions such as technical assistance, water quality testing, contractor training, and installation of centralized treatment technologies and systems.

EPA will be reaching out to states and territories with information on how to submit their letter of intent to participate in this new grant program. EPA will also consult with Tribes and Alaskan Native Villages regarding the Tribal set-aside for this grant program.

This funding complements $3.4 billion in funding <https://epa.gov/system/files/documents/2021-12/fy-2022-bil-srfs-allotment-summary-508.pdf> that is going through the Drinking Water State Revolving Funds (SRFs) and $3.2 billion through the Clean Water SRFs that can also be used to address PFAS in water this year.

**Lifetime Drinking Water Health Advisories for Four PFAS**

The agency is releasing PFAS health advisories <https://epa.gov/sdwa/drinking-water-health-advisories-has> in light of newly available science and in accordance with EPA's responsibility to protect public health. These advisories indicate the level of drinking water contamination below which adverse health effects are not expected to occur. Health advisories provide technical information that federal, state, and local officials can use to inform the development of monitoring plans, investments in treatment solutions, and future policies to protect the public from PFAS exposure.

EPA's lifetime health advisories identify levels to protect all people, including sensitive populations and life stages, from adverse health effects resulting from a lifetime of exposure to these PFAS in drinking water. EPA's lifetime health advisories also take into account other potential sources of exposure to these PFAS beyond drinking water (for example, food, air, consumer products, etc.), which provides an additional layer of protection.

EPA is issuing interim, updated drinking water health advisories for perfluorooctanoic acid (PFOA) and perfluorooctane sulfonic acid (PFOS) that replace those EPA issued in 2016. The updated advisory levels, which are based on new science and consider lifetime exposure, indicate that some negative health effects may occur with concentrations of PFOA or PFOS in water that are near zero and below EPA's ability to detect at this time. The lower the level of PFOA and PFOS, the lower the risk to public health. EPA recommends states, Tribes, territories, and drinking water utilities that detect PFOA and PFOS take steps to reduce exposure. Most uses of PFOA and PFOS were voluntarily phased out by U.S. manufacturers, although there are a limited number of ongoing uses, and these chemicals remain in the environment due to their lack of degradation.

For the first time, EPA is issuing final health advisories for perfluorobutane sulfonic acid and its potassium salt (PFBS) and for hexafluoropropylene oxide (HFPO) dimer acid and its ammonium salt ("GenX" chemicals). In chemical and product manufacturing,

GenX chemicals are considered a replacement for PFOA, and PFBS is considered a replacement for PFOS. The GenX chemicals and PFBS health advisory levels are well above the level of detection, based on risk analyses in recent scientific studies.

The agency's new health advisories provide technical information that federal, state, and local agencies can use to inform actions to address PFAS in drinking water, including water quality monitoring, optimization of existing technologies that reduce PFAS, and strategies to reduce exposure to these substances. EPA encourages states, Tribes, territories, drinking water utilities, and community leaders that find PFAS in their drinking water to take steps to inform residents, undertake additional monitoring to assess the level, scope, and source of contamination, and examine steps to reduce exposure. Individuals concerned about levels of PFAS found in their drinking water should consider actions <https://epa.gov/pfas/meaningful-and-achievable-steps-you-can-take-reduce-your-risk> that may reduce exposure, including installing a home or point of use filter.

## Next Steps

EPA is moving forward with proposing a PFAS National Drinking Water Regulation in fall 2022. As EPA develops this proposed rule, the agency is also evaluating additional PFAS beyond PFOA and PFOS and considering actions to address groups of PFAS. The interim health advisories will provide guidance to states, Tribes, and water systems for the period prior to the regulation going into effect.

The EPA's work to identify and confront the risks that PFAS pose to human health and the environment is a key component in the Biden-Harris Administration whole-of-government approach to confronting these emerging contaminants. This strategy includes steps by the Food and Drug Administration to increase testing for PFAS in food and packaging, by the U.S. Department of Agriculture to help dairy farmers address contamination of livestock, and by the Department of Defense to clean-up contaminated military installations and the elimination of unnecessary PFAS uses.

To receive grant funding announced today through the Bipartisan Infrastructure Law, states and territories should submit a letter of intent <https://epa.gov/dwcapacity/wiin-grant-emerging-contaminants> by August 15, 2022.

To provide the public with more information about these actions, EPA will be hosting a webinar on June 23, 2022 at 12:00 pm Eastern. Learn more or register for the event.

EXIT  <https://epa-pfas-health-advisory.eventbrite.com>

**PFAS Strategic Roadmap**

Today's actions achieve another key commitment as the agency implements the October 2021 PFAS Strategic Roadmap. Under the Roadmap, EPA is working across the agency to protect the public from the health impacts of PFAS. EPA has undertaken a number of actions to deliver progress on PFAS including:

- Issuing the fifth Unregulated Contaminant Monitoring Rule to improve EPA's understanding of the frequency that 29 PFAS are found in the nation's drinking water systems and at what levels.
- Issuing the first Toxic Substances Control Act PFAS test order under the National PFAS Testing Strategy;
- Adding five PFAS to EPA's contaminated site cleanup tables;
- Publishing draft aquatic life water quality criteria for PFOA and PFOS;
- Issuing a memo to proactively address PFAS in Clean Water Act permitting; and
- Publishing a new draft total adsorbable fluorine wastewater method.

Contact Us <https://epa.gov/newsreleases/forms/contact-us> to ask a question, provide feedback, or report a problem.

LAST UPDATED ON JUNE 15, 2022



# Discover.

## Accessibility <https://epa.gov/accessibility>

**Budget & Performance** <https://epa.gov/planandbudget>

**Contracting** <https://epa.gov/contracts>

**EPA www Web Snapshot** <https://epa.gov/utilities/wwwepagov-snapshots>

**Grants** <https://epa.gov/grants>

**No FEAR Act Data** <https://epa.gov/ocr/whistleblower-protections-epa-and-how-they-relate-non-disclosure-agreements-signed-epa>

**Plain Writing** <https://epa.gov/web-policies-and-procedures/plain-writing>

**Privacy** <https://epa.gov/privacy>

**Privacy and Security Notice** <https://epa.gov/privacy/privacy-and-security-notice>

## Connect.

**Data.gov** EXIT <https://www.data.gov/>

**Inspector General** <https://epa.gov/office-inspector-general/about-epas-office-inspector-general>

**Jobs** <https://epa.gov/careers>

**Newsroom** <https://epa.gov/newsroom>

**Open Government** <https://epa.gov/data>

**Regulations.gov** EXIT <https://www.regulations.gov/>

**Subscribe** <https://epa.gov/newsroom/email-subscriptions-epa-news-releases>

**USA.gov** EXIT <https://www.usa.gov/>

**White House** EXIT <https://www.whitehouse.gov/>

## Ask.

**Contact EPA** <https://epa.gov/home/forms/contact-epa>

**EPA Disclaimers** <https://epa.gov/web-policies-and-procedures/epa-disclaimers>

**Hotlines** <https://epa.gov/aboutepa/epa-hotlines>

**Hotlines** <https://epa.gov/aboutepa/epa-hotlines->

**FOIA Requests** <https://epa.gov/foia>

**Frequent Questions** <https://epa.gov/home/frequent-questions-specific-epa-programstopics>

## Follow.

    

This Page Was Left Blank Intentionally

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |  |
|---|---|---|
| AMERICAN CHEMISTRY COUNCIL | ) | |
| | ) | |
| | ) | |
| *Petitioner*, | ) | CASE NO. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY | ) | |
| | ) | |
| *Respondent.* | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1 and Circuit Rule 26.1, Petitioner American Chemistry Council hereby declares as follows:

Petitioner ACC is a not-for-profit trade association that participates on behalf of its members in administrative proceedings and in litigation arising from those proceedings. ACC represents the leading companies engaged in the business of chemistry. ACC has no outstanding shares or debt securities in the hands of the public and has no parent company. No publicly held corporation has a ten percent or greater ownership in ACC.

Dated: July 29, 2022

Respectfully submitted,

*/s/ Nessa Horewitch Coppinger*
Nessa Horewitch Coppinger
D.C. Bar No. 477467
Thomas Richichi
D.C. Cir. Bar No. 31478
Beveridge & Diamond, PC
1900 N Street, N.W., Suite 100
Washington, DC 20036
Ph.: 202.789.6000
ncoppinger@bdlaw.com
trichichi@bdlaw.com

*Counsel for Petitioner American Chemistry
Council*